IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                              |
|------------------------------|---|------------------------------|
|                              | * |                              |
| BRIAN GORMAN,                | * |                              |
| Plaintiff,                   | * |                              |
| v.                           | * | Case No. 1:25-cv-03157-SAG   |
| TOWSON UNIVERSITY, *et al.*, | * |                              |
|                              | * |                              |
| Defendants.                  | * |                              |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S MOTION FOR DECLARATION OF GOOD CAUSE
PURSUANT TO MD. CODE, STATE GOV'T § 12-106(c)**

NOW COMES Plaintiff Brian Gorman ("Plaintiff" or "Professor Gorman"), by and through his undersigned counsel, and moves this Court for a declaration of good cause and relief from the written claim-submission requirement of Md. Code, State Gov't § 12-106(b)(1), pursuant to § 12-106(c)(1) and (c)(2). In support thereof, Plaintiff states as follows:

**INTRODUCTION AND STATUTORY FRAMEWORK**

Maryland's Tort Claims Act conditions the right to bring suit on a claimant's submission of a written claim to the State Treasurer within one year of injury. Md. Code, State Gov't § 12-106(b)(1). Plaintiff did not submit a formal written claim within that window. He moves for relief on two independent grounds.

First, § 12-106(c)(2) provides that the written-notice requirement does not apply when *"the State"* had actual or constructive notice of the claimant's injury or the circumstances giving rise to it within one year of injury. Md. Code, State Gov't § 12-106(c)(2). The record here establishes that

1

the State had direct, multi-channel notice of Professor Gorman's injury both before and within one year after his termination. The written-notice requirement simply does not apply.

Second, and independently, § 12-106(c)(1) authorizes this Court to entertain the action upon good cause shown, unless the State affirmatively demonstrates that its defense was prejudiced. Md. Code, State Gov't § 12-106(c)(1). Good cause exists because Towson University's own termination letter — the document that forms the basis of Plaintiff's due process claim — conditioned his receipt of guaranteed severance compensation on his decision not to pursue any appeal or legal remedy. A reasonable person in Professor Gorman's position would have understood that filing a formal tort claim against the State during that period risked forfeiture of the severance to which he was contractually entitled. The State cannot show prejudice.

### I.    THE STATE HAD ACTUAL AND CONSTRUCTIVE NOTICE WITHIN THE STATUTORY PERIOD UNDER § 12-106(c)(2)

Section 12-106(c)(2) displaces the § 12-106(b)(1) written-notice requirement in its entirety when, within one year after the injury, *"the State"* has actual or constructive notice of the claimant's injury or the circumstances giving rise to it. The statute's subject is *"the State,"* not the Treasurer, not any particular agency or official. That textual choice reflects the legislature's recognition that the notice requirement serves an investigative purpose, and that purpose is fully satisfied when the State (through any competent channel) has been apprised of the relevant facts. *See Jackson v. Bd. of Cty. Comm'rs of Anne Arundel Cty.*, 233 Md. 164, 167, 195 A.2d 693 (1963); *Pope v. Barbre*, 172 Md. App. 391, 414, 915 A.2d 448 (2007) (purpose of MTCA notice requirement is to give the State early notice sufficient to investigate while facts are fresh).

2

The State's notice here was extensive, multi-channel, and predated the termination itself. On March 10, 2022 — six months before Professor Gorman's termination — he submitted a written whistleblower complaint to University President Schatzel, Provost Perreault, University Counsel, and HR Director Jones, documenting in detail the retaliatory conduct, corruption in hiring, and wage theft that ultimately culminated in his termination. Compl. ¶ 59. One month later, on April 11, 2022, Professor Gorman elevated those same concerns in a direct written complaint to the Governor's Office. Compl. ¶ 63. The State was not merely on notice of a potential claim; its most senior officials, including the Governor's Office, had been specifically notified of the circumstances giving rise to Professor Gorman's injury before it occurred.

The termination became effective October 21, 2022. Compl. ¶ 72. The State, through its own personnel and processes, had actual knowledge of the underlying circumstances well within the one-year statutory window. The investigative purpose that § 12-106(b)(1) exists to serve was not merely satisfied — it was exceeded. Requiring a separate, formal submission to the Treasurer under these circumstances would be a purely ritualistic exercise that the legislature specifically foreclosed when it enacted § 12-106(c)(2).

## II.    GOOD CAUSE EXISTS AND THE STATE CANNOT SHOW PREJUDICE UNDER § 12-106(c)(1)

Even if the Court does not find the § 12-106(c)(2) exemption satisfied on the current record, good cause is established under § 12-106(c)(1) and the State cannot meet its burden to show prejudice.

### A. Towson's Own Unconstitutional Conduct Chilled Plaintiff's Ability to File

3

Section 12-106(c)(1) does not define "good cause," but the term necessarily encompasses circumstances in which a reasonable person in the claimant's position would have had a valid reason for the failure to comply — particularly where that failure is traceable to the State's own conduct. The statute's animating purpose is investigative: to give the State early notice so it can investigate while facts are fresh. *Pope v. Barbre*, 172 Md. App. at 414, 915 A.2d 448 (quoting *Haupt v. State*, 340 Md. 462, 470, 667 A.2d 179 (1995)). Where, as here, that investigative purpose has been fully served through the State's own channels, and where the State's own conduct caused the claimant's failure to file, good cause is established.

That is precisely this case. Towson's September 23, 2022 termination letter conditioned Professor Gorman's receipt of one full year of severance compensation — compensation that Towson's own ART Policy guarantees unconditionally to terminated tenured faculty — on his decision not to appeal his termination. Compl. ¶¶ 72, 81–84, 87. The ART Policy states without qualification that after termination of a tenured professor, *"compensation shall continue for a period of one year commencing on the date on which the appointee received notice of termination."* Compl. ¶ 73. The Policy imposes no condition on that payment. Towson imposed one of its own.

The one-year severance period ran from October 21, 2022 through October 20, 2023 — exactly coextensive with the MTCA notice window. Compl. ¶ 81. A reasonable person in Professor Gorman's position, having received a termination letter conditioning his guaranteed severance on the non-pursuit of any appeal, would reasonably have understood that filing a formal written tort claim with the Maryland State Treasurer — an official legal demand against the State arising from the same termination — would place that severance in jeopardy. The State cannot now invoke § 12-106(b)(1) as a defense when its own conduct created the conditions that prevented timely compliance.

4

Professor Gorman did not retain present counsel until after the one-year notice period had expired. Navigating a complex termination from a tenured university position, subject to a coercive severance condition, and without counsel to advise him of the MTCA's technical requirements, Professor Gorman's failure to submit a written Treasurer notice is precisely the circumstance the legislature contemplated when it enacted § 12-106(c)(1). This fact, considered alongside the structural chilling effect described above, establishes good cause.

### III.   THE STATE SUFFERED NO PREJUDICE

Once Plaintiff establishes good cause, the burden shifts entirely to the State. The Court may entertain the action "unless the State can affirmatively show that its defense has been prejudiced…." Md. Code, State Gov't § 12-106(c)(1). Mere passage of time does not suffice. The State must identify specific, concrete impairment to its ability to investigate or defend, and it cannot do so here.

Upon retention of counsel, Plaintiff's attorneys sent a demand letter on March 29, 2024. The State, through the Office of the Attorney General, responded on April 8, 2024 — just ten days later. The OAG was prepared, engaged, and in possession of the relevant facts. The OAG subsequently accepted service on behalf of Towson and all individual defendants in October 2025, ECF No. 12, and filed a substantive Motion to Dismiss on February 17, 2026, ECF No. 20. The underlying administrative record (PTR committee proceedings, termination correspondence, HR files, and disciplinary records) is preserved within Towson's own institutional files. The witness pool consists of current and recent Towson employees. No investigative opportunity has been lost. The State's litigation position is precisely as strong today as it would have been had a written claim been timely submitted to the Treasurer.

That the OAG secured representation agreements from all eleven individual defendants within days of being contacted further demonstrates that the State retains full ability to communicate with and obtain cooperation from the relevant witnesses — the same cooperation that would be required for any investigation or discovery the State contends was prejudiced by the absence of formal Treasurer notice.

### IV.    IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO AMEND

Should the Court find the current record insufficient to declare good cause or establish state notice without additional factual development, Plaintiff respectfully requests leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a)(2). Leave to amend is freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The amendment would be targeted and limited: (1) the specific language of the severance condition as Professor Gorman understood it during the notice window; (2) any communications during the October 2022–October 2023 period reflecting Professor Gorman's awareness of that condition and its effect on his decision-making; and (3) any additional contacts with state entities during that period bearing on constructive notice under § 12-106(c)(2). Dismissal with prejudice of the state law claims on a curable record deficiency, without an opportunity to amend, is not warranted.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (1) finding that the State had actual or constructive notice sufficient to satisfy § 12-106(c)(2) and exempting Plaintiff from the written-notice requirement; or, alternatively, (2) declaring good cause and finding the absence of State prejudice under § 12-106(c)(1) and permitting Plaintiff's state law claims to proceed; or, alternatively, (3) granting Plaintiff leave to amend to supplement the factual record on either ground.

Dated: March 10, 2026                    Respectfully Submitted,


/s/ Katherine Patton

Katherine Patton, Esq.

Maryland Bar Attorney ID: 2112140039
Fed. Bar No. 30693
Quinn Patton, LC
838 Ritchie Highway, Suite 4
Severna Park, MD 21146
(443) 247-5444
katpatton@quinnpatton.com
www.quinnpatton.com

*Attorney for the Plaintiff*

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of March, 2026, a copy of this Motion for Declaration

of Good Cause Pursuant to Md. Code State Gov't § 12-106(c) was served electronically via the

Court's ECF system upon:

Kathryn Hummel
Assistant Attorney General
Federal Bar No. 21991
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
khummel@oag.maryland.gov

Respectfully,

 /s/ Katherine Patton

Katherine Patton

8