## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BRIAN GORMAN,                                    *

          *Plaintiff,*                       *

      v.                                      *

                      *    No. 1:25-cv-03157-SAG

TOWSON UNIVERSITY, *et al.*                      *

          *Defendants*.                     *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

The defendants submit, through counsel, this reply memorandum in support of their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Brian Gorman, a former professor at Towson University (the "University"), has sued the University and eleven of his former colleagues (the "Individual Defendants"). He alleges under 42 U.S.C. § 1983 a violation of his constitutional right to procedural due process and under 42 U.S.C. §§ 1983 and 1985, a First Amendment conspiracy to deprive him of his property interest in his employment. He asserts state-law claims for wrongful termination, breach of contract, negligent supervision, intentional misrepresentation, negligent misrepresentation, contractual interference with economic relations, and intentional interference with economic relations. The defendants have moved to dismiss because the University is entitled to Eleventh Amendment immunity and the Individual Defendants are entitled to Eleventh Amendment immunity, qualified immunity, and/or State personnel immunity. In addition, the breach of contract claim is time-barred and the complaint fails to state any viable cause of action.

**REPLY ARGUMENT**

I.    **EACH OF MR. GORMAN'S STATE LAW CLAIMS IS BARRED BY IMMUNITY.**

Mr. Gorman asserts the following state law claims:  (1) termination against public policy (Count III) (ECF No.1, at 25-27; (2) breach of contract (Count IV) (ECF No. 1, at 27-29); (3) negligent supervision (Count V) (ECF No. 1, at 29-32); (4) intentional misrepresentation (the second Count VI[1]) (ECF No. 1, at 32-33); (5) negligent misrepresentation (Count VII) (ECF No. 1, at 34); (6) contractual interference with economic relations (the second Count VII[2]) (ECF No. 1, at 34-36); and (7) intentional interference with economic relations (Count VIII) (ECF No. 1, at 36-37).  The University has Eleventh Amendment immunity as to each of these claims (ECF No. 20-1, at 9-10) and sovereign immunity as to the breach of contract claim because it is time-barred (ECF No. 20-1, at 15).  The Individual Defendants have Eleventh Amendment immunity and/or State personnel immunity as to each of these claims (ECF No. 20-1, at 11-15).  Mr. Gorman has failed to advance any argument to save his state law claims from dismissal.

A.    **Each State Law Claim is Barred by Eleventh Amendment Immunity.**

In response to the defendants' respective assertions of Eleventh Amendment immunity (ECF No. 20-1, at 9-13), Mr. Gorman raises only the *Ex parte Young* exception (ECF No. 21, at 5-8), which is inapplicable to his state law claims.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (explaining that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law").  Accordingly, Counts III, IV, V, VI, VII (both of them), and VIII are properly dismissed based on Eleventh Amendment immunity.

---

[1] There are two claims labeled as "Count VI."

[2] There are two claims labeled as "Count VII."

**B.    The Breach of Contract Claim is Time-Barred.**

In addition to being barred by Eleventh Amendment immunity, Mr. Gorman's breach of contract claim is barred by sovereign immunity because it is time-barred under State Government § 12-202.  The latest event pertaining to Mr. Gorman's breach of contract claim (Count IV) occurred when Mr. Gorman's employment was terminated on September 23, 2022 (ECF No. 1, at 15-17), and his one-year period for filing began to run on that date. State Gov't § 12-202.  State Government § 12-202 is not subject to tolling, as Mr. Gorman contends.  (ECF No. 21, at 21.)  State Government § 12-202 "states that a claim under the subtitle 'is barred' unless suit is filed within one year."  *State v. Sharafeldin*, 382 Md. 129, 141 (2004).  This time bar is "not a mere statute of limitations but sets forth a condition to the action itself" and it is, therefore, not subject to tolling.  *Id*. at 147-48; *see also Stepp v. University of Maryland Ctr. for Env't Scis.*, No. 1369, Sept. Term, 2024, 2025 WL 2985030, at *8 (App. Ct. Md. Oct. 23, 2025) (unreported) ("Nothing in [State Gov't § 12-202] suggests that this limited waiver of sovereign immunity could be stayed or tolled.").

Mr. Gorman's belated attempt to comply with the MTCA notice requirements (*see* ECF No. 22) has no effect on his breach of contract claim.  *See Elliott v. Maryland Corr. Training Ctr.*, No. CV CCB-20-2963, 2021 WL 2155035, at *3 (D. Md. May 27, 2021) (explaining that the Court could not find "any cases suggesting that compliance with the [MTCA] acts to toll Maryland's limited waiver of sovereign immunity in contract actions" and that a "plain reading of Title 12 of the State Government chapter of the Maryland Code indicates that the legislature intended for one procedure to apply to contract claims (Subtitle 2—Actions in Contract) and another to apply to tort claims (Subtitle 1—Maryland Tort Claims Act)").

**C.**    **The Individual Defendants Have State Personnel Immunity.**

In response to the Individual Defendants' assertion of State personnel immunity from the state law claims, Mr. Gorman argues that this immunity does not apply because he has pleaded that these defendants acted with malice or gross negligence, and that he needs to gather additional information about the defendants' state of mind.  (ECF No. 21, at 21-22.)  But "the mere existence of an issue as to intent, motive, or state of mind is insufficient . . . to defeat a motion to dismiss" based on State personnel immunity.  *Bord v. Baltimore County*, 220 Md. App. 529, 558 (2014) (internal punctuation, quotation marks, and citations omitted).

Mr. Gorman has not pleaded facts sufficient to allege malice.  Malice is established when a state actor "intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."  *Bord*, 220 Md. App. at 557 (internal quotation marks and citations omitted).  A complaint must "allege with some clarity and precision . . . facts which make the acts malicious." *Id.* at 559 (internal punctuation, quotation marks, and citations omitted).  To the extent that Mr. Gorman claims as support for this argument an alleged comment made by Professor Manasse, that comment was allegedly made related to Mr. Gorman's pay increase, which is not the subject of his current lawsuit, but in any event does not rise to the level of malice.  (ECF No. 21, at 21-22.)  To the extent Mr. Gorman argues that he has pleaded malice by alleging that State actors assigned certain faculty members to committees, voted against him, and placed conditions on his severance, these allegations also do not rise to the level of malicious acts.  (ECF No. 1, at 21-22.)

Mr. Gorman has not pleaded facts sufficient to allege gross negligence.  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another."  *Barbre v. Pope*, 402 Md. 157, 187 (2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985) and *Romanesk v. Rose*, 248 Md. 420

(1968)).  "[A] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."  *Id*.  Mr. Gorman's allegations about committee assignments, voting, and severance do not sufficiently allege gross negligence that could defeat State personnel immunity.  *See Wells v. State*, 100 Md. App. 693, 705-06 (1994) (finding no gross negligence where  allegations lacked the requisite intent); *Boyer v. State*, 323 Md. 558 (1991) (explaining that conclusory allegations cannot defeat the immunity afforded by the MTCA).

## II.    THE FIRST AMENDMENT IS NOT IMPLICATED BY THE FACTS ALLEGED.

Mr. Gorman has failed to plead facts that implicate speech protected by the First Amendment.  As such, he has failed to sufficiently plead a cause of action for First Amendment violations (*see* Count II, ECF No. 1, at 20-21 ¶¶ 2; the first Count VI[3], ECF No. 1, at 21-25 ¶¶ 10-25), and he has not plausibly alleged any ongoing violation of his First Amendment rights that could justify his reliance on the *Ex parte Young* exception to Eleventh Amendment immunity.

Mr. Gorman's speech at issue was not protected speech in which he was speaking as a citizen.  When a professor at a public university speaks "upon a matter of public concern, either *in his capacity as a private citizen . . .* or by way of *scholarship and teaching* in his capacity as a professor," that speech is First Amendment protected speech.  *Katti v. Arden*, 161 F.4th 217, 228 (4th Cir. 2025) (citations and internal quotation marks omitted) (emphasis added).  Mr. Gorman was not speaking in his personal capacity as a private citizen or by way of his scholarship or teaching; he was speaking as an employee on issues related to internal personnel matters.

The First Amendment is not implicated simply because Mr. Gorman's employer was a public entity.  (ECF No. 21, at 11.)  "To presume that all matters which transpire within a

---

[3] There are two claims labeled as "Count VI."

government office are of public concern would mean that virtually every remark . . . would plant the seed of a constitutional case." *Connick v. Myers*, 461 U.S. 138, 149 (1983). "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.*; *Patterson v. Kent State Univ.*, 155 F.4th 635, 649 (6th Cir. 2025) (in a case involving a professor at a public university, finding internal personnel related complaints not protected by the First Amendment).

Mr. Gorman's reliance upon *Lane v. Franks*, 573 U.S. 228, 232 (2014) is misplaced. In *Lane*, the speech at issue was a program director's courtroom testimony, compelled by subpoena, at the criminal indictment and trial of a local politician who had been fraudulently compensated by the program. *Id.* at 231-34. The Court's analysis centered on the speech being sworn court testimony, *id.* at 238 ("Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth."), that was related to a public corruption scandal that was the subject of considerable media attention and citizen concern, *id.* at 241 ("The content of Lane's testimony—corruption in a public program and misuse of state funds—obviously involves a matter of significant public concern."). Mr. Gorman was not compelled to offer courtroom testimony under oath and his complaints did not relate to a matter of public concern.

Mr. Gorman's allegation that faculty members are expected to serve on faculty committees (ECF No. 1, at 6 ¶ 25) and his arguments related to ethics (ECF No. 21, at 22-23) contradict his claim that his duties as a faculty member were limited to teaching. (ECF No. 21, at 9.)

Courts have held that when public university professors raise ethical concerns within the context of the faculty hiring and retention processes or committee work, the professors are speaking as employees and not in their capacities as private citizens. *See, e.g., Plouffe v. Cevallos*,

777 F. App'x 594, 603 (3d Cir. 2019) (holding that speech was within capacity as employee where public university professor raised concerns as member of faculty search committee and then filed a related whistleblowing complaint); *Hong v. Grant*, 516 F. Supp. 2d 1158, 1168 (C.D. Cal. 2007) (finding that where public university professor raised ethical concerns related to another professor's tenure review process, concerns were made pursuant to official duties and within his professional capacity, and not in his capacity as a private citizen), *aff'd on other grounds*, 403 F. App'x 236 (9th Cir. 2010); *Isenalumhe v. McDuffie*, 697 F. Supp. 2d 367, 379 (E.D.N.Y. 2010) (finding that where professors at public college accused committee chairperson of falsifying election results for college-wide committees, the professors were speaking as employees).

## III.    WITHOUT A PLAUSIBLE ONGOING CONSTITUTIONAL VIOLATION, THE *EX PARTE YOUNG* EXCEPTION SHOULD NOT BE APPLIED.

In an effort to avoid the bar of Eleventh Amendment immunity Mr. Gorman now claims that he is suing the Individual Defendants in their official capacities (ECF No. 21, at 5) and asserts that he is seeking only prospective injunctive relief from the University (ECF No. 21, at 7). But his complaint includes only one conclusory prayer for relief that fails to delineate among the defendants or the claims (ECF No. 1, at 37-38).

The *Ex parte Young* doctrine is the only exception Mr. Gorman raises in response to the defendants' assertion of Eleventh Amendment immunity, arguing that he is entitled to pursue injunctive relief against Provost Perreault, Dean Chulos, and former President Schatzel,[4] who he claims are committing ongoing constitutional violations by refusing to reinstatement him. (ECF No. 21, at 5-8.) The *Ex parte Young* doctrine does not apply to the claims Mr. Gorman has brought against the University as a defendant. *See McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir.

---

[4] Dr. Schatzel left the University in 2023 and thus could not reinstate Mr. Gorman.

2010) (explaining that for this exception to apply, the claim must be made against a state officer who has a duty to enforce the challenged law and who has a special relationship to the challenged statute).   Further, Mr. Gorman apparently concedes that Professor Hughes, Professor Pryor, Professor Collins, Professor Durington, Professor Manasse, Professor Elliott, Professor Clifford, and Mr. Barker have no "special relationship" to his challenged action and thus are entitled to Eleventh Amendment immunity.  (*See* ECF No. 21, at 5-8.)  Accordingly, the *Ex parte Young* doctrine only potentially applies to Mr. Gorman's two claims of First Amendment retaliation and civil conspiracy against Provost Perreault, Dean Chulos, and former President Schatzel, and those claims do not plausibly allege any ongoing violation of his First Amendment rights.

IV.   **IN THEIR INDIVIDUAL CAPACITIES, THE INDIVIDUAL DEFENDANTS HAVE QUALIFIED IMMUNITY FROM THE FEDERAL LAW CLAIMS.**

The Individual Defendants have qualified immunity from Mr. Gorman's federal claims in their individual capacities.  Mr. Gorman does not have a viable First Amendment claim and he has not alleged facts demonstrating that his former colleagues, in performing their job duties, engaged in clearly established unlawful conduct.  *See Garrett v. Clarke*, 74 F.4th at 579, 584 n.3 (2023) ("The Supreme Court and our Court have extended qualified immunity to government officials' choices in . . . enforcing government policies"); *see also Ziglar v. Abbasi*, 582 U.S. 120, 155 (2017) (applying qualified immunity to a claim brought under 42 U.S.C § 1985 and suggesting that "officials employed by the same governmental department do not conspire when they speak to one another and work together in their official capacities").

V.   **THE COMPLAINT FAILS TO STATE ANY VIABLE CLAIM.**

A.   **The Procedural Due Process Claim Fails.**

Mr. Gorman's complaint and his opposition both indicate that Mr. Gorman was provided with notice of the charges against him, an explanation of the University's evidence, and "an

8

opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Mr. Gorman argues that he should have been offered an opportunity for a hearing (ECF No. 21, at 13), but he does not allege that he requested a hearing related to his suspension or termination. (ECF No. 1, at 16-17 ¶ 70.)

### B.    The Civil Conspiracy Claims Fail.

Mr. Gorman alleges a conspiracy under § 1985, but he makes no factual allegations related to a motive based on race or other protected class. (ECF No. 1, at 20-21.) Mr. Gorman claims that § 1985 does not necessarily require a class-based animus (ECF No. 21, at 16-17), but "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some *racial*, or perhaps otherwise *class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added). Mr. Gorman argues that he was "treated differently than his similarly situated non-whistle blower counterparts . . ." (ECF No. 21, at 18), but this is not a qualifying protected class under § 1985. *See Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) (explaining, "we do not think that 'whistleblowers' qualify as a class entitled to the benefits of section 1985(3)" because they "do not meet the test of possessing 'characteristics comparable to those characterizing classes such as race, national origin, and sex'").

Mr. Gorman asserts a conspiracy claim under § 1983, alleging a First Amendment retaliation conspiracy to deny him equal protection in employment proceedings (ECF No. 1, at 22 ¶ 10), but as previously outlined, he has not alleged facts that implicate the First Amendment, *see Porter v. Board of Trs. of N. Carolina State Univ.*, 72 F.4th 573, 584 (4th Cir. 2023) (distinguishing speaking as an employee from speaking as a citizen), or the Equal Protection Clause, *see Voters Organized for the Integrity of Elections v. Baltimore City Elections Bd.*, 214 F. Supp. 3d 448, 456

(D. Md. 2016) ("A claim of denial of equal protection necessarily rests on a plausible allegation of differential treatment of members of a protected class due to discriminatory intent.").

### C.   The Termination Against Public Policy Claim Lacks the Requisite Nexus.

Mr. Gorman alleges that he was discharged for "exercising his legal right to make complaints against his colleagues by raising issues of employee misconduct and potential conflicts of interest and use of State and federal funds within a State university." (ECF No. 1, at 25 ¶ 28.) Mr. Gorman argues that a nexus exists between his complaints and his discharge based on temporal proximity (ECF No. 21, at 23-24), but his complaints were made in January, February and April of 2021 (ECF No. 21, at 23-24), and he was suspended in June 2022 (ECF No. 1, at 15 ¶ 64), and terminated in September 2022 (ECF No. 1, at 16 ¶ 69). Although temporal proximity may sometimes be sufficient as a nexus, it must be close, and here it is not. *See Kasmir v. Retail Servs. & Sys., Inc.*, 264 Md. App. 370, 405 (2025) (explaining in the retaliation context that "[c]ases accepting mere temporal proximity as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close").

### D.   Mr. Gorman Advances No Argument Related to the Pleading Deficiencies of his Claims of Negligent Supervision, Intentional Misrepresentation, Interference with Economic Relations, and Negligent Misrepresentation.

Mr. Gorman does not provide an opposition to the University's argument that he has failed to sufficiently allege negligent supervision, intentional misrepresentation, and interference with economic relations. As to his negligent misrepresentation claim, he claims that it was "not challenged on any ground specific to its substantive elements" (ECF No. 21, at 24), which is not accurate (*see* ECF No. 20-1, at 23-24).

10

**VI.    THE REQUEST TO AMEND SHOULD BE DENIED.**

"While [the Fourth Circuit standard] generally encourage[s] amendment, there are, of course, circumstances that justify denying a plaintiff the opportunity to try again." *United States ex rel. Nicholson v. MedCom Carolinas, Inc*., 42 F.4th 185, 197 (4th Cir. 2022).  The Fourth Circuit has "laid out three such justifications for denying leave to amend: prejudice to the opposing party, bad faith, or where the amendment would be futile." *Id*. (citations omitted).  Mr. Gorman's request to amend should be denied because amendment would be futile.  *See In re Triangle Cap. Corp. Sec. Litig*., 988 F.3d 743, 750 (4th Cir. 2021) (proposed amendment is futile if "clearly insufficient or frivolous on its face") (internal quotation marks and citations omitted).  Mr. Gorman fails to explain how amendment would salvage his claims, and amendment cannot defeat the defendants' immunity defenses.

### CONCLUSION

The motion to dismiss should be granted and the request to amend the complaint should be denied.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Kathryn Hummel

KATHRYN HUMMEL
Federal Bar No. 21991
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 17th Floor
Baltimore, Maryland  21202
khummel@oag.maryland.gov
(410) 576-6341

March 30, 2026                                          Attorneys for Defendants

11