**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **BRIAN GORMAN** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Case No.: SAG-25-03157** |
| v. | * | |
| | * | |
| **TOWSON UNIVERSITY,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Brian Gorman ("Plaintiff") brings this action against his former employer, Towson University (the "University"), and several University employees and officials, Kimberely Schatzel, Melanie Perreault, Chris Chulos, Nathan Barker, Marion Hughes, Douglas Pryor, Elizabeth Clifford, Matthew Durington, Michelle Manasse, Michael Elliott, and Samuel Collins (collectively, "Individual Defendants," and with the University, "Defendants"). ECF 1. Defendants have jointly filed a motion to dismiss, ECF 20, which Plaintiff opposed, ECF 21. Defendants then jointly filed a reply. ECF 25. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' motion to dismiss will be granted.

**I.    BACKGROUND**

The following facts are derived from Plaintiff's Complaint, ECF 1, and are assumed to be true for purposes of this motion.

Plaintiff previously worked as a tenured professor at the University. *Id.* at 4–5. In January, 2021, Plaintiff emailed Chulos, who served as a Dean, a complaint regarding a job search for a tenure-track faculty position. *Id.* at 5. Specifically, the complaint alleged that Manasse and another

search committee member, "Professor Antunes," might have a conflict of interest and that there existed an appearance of bias by Clifford and Elliott. *Id.*

On February 4, 2021, Plaintiff notified Collins and Durington of concerns that he had regarding the "Third Year Review" of another colleague. *Id.* at 6. The following day, Plaintiff was not allowed to participate in the Third Year Review even though doing so constituted a standard obligation for tenured professors such as Plaintiff. *Id.* On February 8, he sent an email objecting to his exclusion from the Third Year Review. *Id.* Later that month, "faculty" filed a complaint against Plaintiff "alleging an attempt to 'shut down' 'equity issues' and 'disparage' his 'colleagues' reputations' through his whistleblowing reports dated Nov. 27, 2020, Feb. 5, 2021, and Feb. 8, 2021." *Id.* at 6–7. A University human resources representative later found the allegations against Plaintiff unsubstantiated but noted that Plaintiff's "whistleblowing reports did make his colleagues disgruntled with him." *Id.* at 7.

Soon thereafter, Plaintiff was informed that he would not be recommend for a merit increase to his salary. *Id.* Previously, Manasse had told Plaintiff that "anyone who goes against the department will never see a pay increase for the rest of their life." *Id.* at 9. Plaintiff met with Chulos about the merit increase denial and sent Chulos his appeal of it. *Id.* at 7. Plaintiff later submitted secondary appeals regarding the merit increase denial, but the University eventually issued its "final refusal" of the merit increase. *Id.* at 8. Although Plaintiff attempted to appeal this decision to the Chancellor of the University System of Maryland, the Chancellor's Office notified him that it had no authority to override the University's decision. *Id.* at 8–9.

In April, 2021, Plaintiff sent a memo to Chulos, his department chair Hughes, and other University officials regarding the job search for the tenure-track faculty position. *Id.* at 7. Plaintiff reported that Professor Antunes had disclosed a professional relationship with one of the

candidates. *Id.* Plaintiff also later submitted an internal "Ethics Point" referral regarding this matter. *Id.* at 8. Several months later, Plaintiff had two meetings with Hughes, Chulos, and another official to discuss Plaintiff's concerns regarding "the dysfunctional and hostile environment." *Id.* at 9.

In October, 2021, Plaintiff received a "No Merit" designation despite allegedly surpassing the minimum criteria for "Base Merit." *Id.*

The following January, Plaintiff submitted his comprehensive review, which tenured faculty must submit every five years and summarizes the professor's work over the preceding five years. *Id.* at 9. The six members of the Promotion, Tenure, and Rank ("PTR") Committee, Pryor, Collins, Durington, Manasse, Elliott, and Clifford, each voted that Plaintiff's comprehensive review was "unsatisfactory." *Id.* at 9–10. Plaintiff later met with Collins and Durington about the decision and expressed his concern that it was in retaliation for his prior whistleblowing. *Id.* at 10. In March, Chulos sent a letter to Perrault, who served as Provost, affirming the decision that Plaintiff's comprehensive review was unsatisfactory. *Id.* at 10. Plaintiff alleges that that decision disregarded Plaintiff's accomplishments in several areas and that Chulos's letter failed to specifically delineate the deficiencies in Plaintiff's comprehensive review. *Id.* That month, Plaintiff sent a complaint to University President Schatzel, Perrault, and other officials alleging "what he characterized as RICO issues and corruption in hiring, promotion and retention, as well as wage theft (denial of earned merit increase) and retaliation." *Id.* at 14. Plaintiff also submitted a whistleblower complaint to the Governor's Office. *Id.* at 15.

Perrault later directed Plaintiff to develop a Professional Development Plan ("PDP") to remediate the alleged problems with his comprehensive review, as required by University policy. *Id.* at 14–15. When Plaintiff failed to submit his PDP by the policy's deadline, Perrault notified

him that he was, effective immediately, suspended with pay and was not to teach, advise students, or otherwise come to campus. *Id.* at 15.

Two months later, Plaintiff submitted his PDP. *Id.* at 15. Following review, Hughes sent Chulos and Plaintiff a letter formally rejecting the PDP for failure to address the alleged issues with the comprehensive review. *Id.* at 15–16. The next day, a ten-minute meeting between Chulos, Hughes, and Plaintiff occurred. *Id.* at 16. Chulos informed Plaintiff that the meeting would not involve questions, discussion, or debate. *Id.* Two weeks later, Schatzel sent Plaintiff a letter notifying him that the University was terminating his employment. *Id.*

Plaintiff now brings six claims against the University: violation of procedural due process pursuant to 42 U.S.C. § 1983, civil conspiracy under § 1983, termination against public policy, breach of contract, negligent supervision, and negligent misrepresentation. *Id.* at 17, 21–22, 25, 27, 29, 34. He brings five claims against various groupings of Individual Defendants: civil conspiracy under 42 U.S.C. § 1985(3), civil conspiracy under § 1983, intentional misrepresentation, "contractual interference with economic relations," and intentional interference with economic relations. *Id.* at 20, 21–22, 32, 34, 36. He seeks both damages and several forms of injunctive relief, including reinstatement to his former position. *Id.* at 37–38.

## II.   LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule

8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Claims Against the University

The University contends that the Eleventh Amendment bars the claims against it. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Because the University is a "[c]onstituent institution" of the University System of Maryland, *see* Md. Code Ann. Educ. § 12-101(b)(6)(ix), which itself is "an instrumentality of the State" and "an independent unit of State government," *see* Md. Code Ann. Educ. § 12-102(a)(1)–(3), the University constitutes an agency of the state of Maryland entitled to sovereign immunity. *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 451 (D. Md. 2014). Furthermore, although a plaintiff may state a valid claim for injunctive relief against state employees sued in their official capacity under the *Ex Parte Young* exception to Eleventh Amendment immunity, *Indus. Servs. Grp., Inc. v.*

*Dobson*, 68 F.4th 155, 163 (4th Cir. 2023) (citing *Ex Parte Young*, 209 U.S. 123, 160 (1908)), that exception does not extend to suits against state agencies, "which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The claims against the University therefore must be dismissed.

### B. Federal Claims Against Individual Defendants

Individual Defendants argue that the Eleventh Amendment bars the claims against them as well to the extent that Plaintiff brings the claims against them in their official capacities. Claims against state employees acting in their official capacities are subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). However, as noted above, a plaintiff may state a valid claim for injunctive relief against state employees sued in their official capacities under the *Ex Parte Young* exception. To determine whether *Ex Parte Young* applies to the federal claims, this Court must "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)).

As the Fourth Circuit noted in *Biggs v. North Carolina Department of Public Safety*, 953 F.3d 236, 243 (4th Cir. 2020), "[e]very circuit, including this one, has held that claims for reinstatement to previous employment meet the *Ex Parte Young* exception." Individual Defendants counter that the federal claims against them, based on Plaintiff's past termination, are not ongoing. The Fourth Circuit rejected this argument in *Biggs*, concluding that the refusal to reinstate the plaintiff constituted an ongoing violation notwithstanding that the plaintiff's allegedly

discriminatory demotion occurred in the past. *Id.* For the same reason, the refusal to reinstate Plaintiff constitutes an ongoing violation notwithstanding that his allegedly retaliatory termination occurred in the past. Thus, the Eleventh Amendment does not bar Plaintiff from seeking the injunctive relief requested in the Complaint against Individual Defendants in their official capacities.

This Court will therefore turn to the merits of the federal claims against Individual Defendants.

### 1. Section 1985(3) Conspiracy Claim

To allege a § 1985(3) conspiracy, a plaintiff must satisfy a "relatively stringent standard." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Specifically, a plaintiff must prove five elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Id.* at 1376. For the discriminatory animus to be "class-based" in this context, "the class must possess the 'discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex.'" *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (quoting *Bellamy v. Mason's Stores, Inc.*, 368 F. Supp. 1025, 1028 (E.D. Va. 1973), *aff'd*, 508 F.2d 504 (4th Cir. 1974)). Although Plaintiff argues Defendants were motivated by discriminatory animus based on his whistleblower status, the Fourth Circuit has expressly rejected this theory, concluding that whistleblowers do not constitute a class under § 1985(3). *Id.* at 1258. Accordingly, this claim must be dismissed.

7

**2.  Section 1983 Conspiracy Claim**

To state a conspiracy claim under § 1983, the plaintiff must allege that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Establishing this claim constitutes "a weighty burden." *Id.* To do so, the plaintiff must raise the inference that each alleged member of the conspiracy shared the same conspiratorial objective and "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

The specific constitutional right or rights underlying this claim is difficult to discern, but it appears that Plaintiff is alleging that Defendants conspired to deprive him of his rights to (1) equal protection, (2) due process, and (3) freedom from retaliation based on protected speech. As a preliminary matter, however, this Court concludes that Plaintiff has failed to provide sufficient factual allegations from which this Court may infer a mutual understanding and common plan to deprive him of any of those rights.

The Complaint alleges that Plaintiff made several whistleblower complaints about his workplace. Although this Court may infer that individuals about whom Plaintiff made complaints would have a motive to retaliate against him, the Complaint largely fails to specify the individuals who were the subjects of Plaintiff's complaints. The Complaint does so in only one instance as to any of the Individual Defendants, alleging a potential conflict of interest or appearance of bias by Manasse, Clifford, and Elliott concerning the search for a tenure-track faculty position. The Complaint does not allege, however, that Manasse, Clifford, or Elliott knew of the complaint against them. Although Plaintiff alleges that unidentified "faculty" filed a complaint against him based on whistleblower reports that he had made and that that complaint led a human resources

representative to conclude that some of Plaintiff's colleagues were "disgruntled" with him because of his whistleblowing, that complaint referenced whistleblowing reports other than the one that Plaintiff made against Manasse, Clifford, and Elliott. Specifically, the complaint by the unidentified faculty cited reports that Plaintiff had made on "Nov. 27, 2020, Feb. 5, 2021, and Feb. 8, 2021." The Complaint here otherwise makes no reference to a November 27, 2020 report; February 5, 2021 is the date that Plaintiff was denied participation in the Third Year Review, rather than the date he allegedly made any report; and the February 8, 2021 report related to his exclusion from the Third Year Review, rather than the job search involving Manasse, Clifford, and Elliott. Without any factual allegations suggesting that Manasse, Clifford, and Elliott knew of Plaintiff's whistleblower report against them, this Court cannot conclude that they had a motive to retaliate against Plaintiff by depriving him of any constitutional rights. Furthermore, the Complaint alleges no other facts suggesting a reason that any of the other Individual Defendants would have to engage in a common scheme, based on the same conspiratorial objective, to deprive Plaintiff of his constitutional rights. Plaintiff has therefore failed to state a § 1983 conspiracy claim.

Because this Court concludes that Plaintiff has failed to state either of his federal claims against Individual Defendants, it need not consider Individual Defendants' alternative argument that they are entitled to qualified immunity as to those claims.

## C. State Claims Against Individual Defendants

Turning to the state claims, this Court first notes that the *Ex Parte Young* exception does not apply to state law claims, *Pennhurst State Sch. &. Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), so the state law claims brought against Individual Defendants in their official capacities must be dismissed based on Eleventh Amendment immunity.

Individual Defendants next argue, citing two state statutes, that they are entitled to "state personnel immunity" for the state claims brought against them in their individual capacities. *See* ECF 20-1 at 14–15 (citing Md. Code Ann., State Gov't, § 12-101 and Md. Code Ann., Cts. & Jud. Proc. § 5-522). Those two statutes concern immunity of state personnel under certain circumstances in *state courts*. *See* § 12-101(a)(a) ("Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, *in a court of the State . . . .*") (emphasis added); § 5-522(b) ("State personnel, as defined in § 12-101 of the State Government Article, are immune from suit *in courts of the State . . . .*") (emphasis added).

Notwithstanding this state court limitation on statutory immunity, Maryland also recognizes the common law doctrine of public official immunity, *see e.g.*, *James v. Prince George's County*, 288 Md. 315, 323 (1980), and the Fourth Circuit has applied this Maryland common law public official immunity to claims against state personnel brought in federal court, *see Gray-Hopkins v. Prince George's County*, 309 F.3d 224, 232–33 (4th Cir. 2002). Common law public official immunity, however, does not apply to intentional torts. *Houghton v. Forrest*, 412 Md. 578, 582 (2010). Plaintiff brings only intentional tort state law claims (an intentional misrepresentation claim and two intentional interference with economic relations claims) against Individual Defendants. Thus, public official immunity will not bar these claims, the merits of which this Court will address in turn.

### 1. Intentional Misrepresentation Claim

Intentional Misrepresentation requires that (1) the defendant made a representation that was false, (2) the representation's falsity was known to the defendant or was made with such reckless indifference to the truth to impute knowledge, (3) the representation was made for the

purpose of defrauding the plaintiff, (4) the plaintiff relied upon the representation and had the right to rely upon it with belief in its truth such that he would not have acted in a way that caused him damage absent the representation, and (5) damage resulted directly from the representation. *Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 189 Md. App. 310, 353 (2009).

Plaintiff alleges that the Individual Defendants who served on the PTR Committee intentionally misrepresented that his comprehensive evaluation was unsatisfactory. Plaintiff has failed, however, to allege how he relied on this alleged misrepresentation, which he always perceived as false, to his detriment. Plaintiff points to the fact that he would not have prepared a PDP absent the misrepresentation, but it is not clear how preparing the PDP caused Plaintiff's alleged damages. Indeed, he initially did not prepare a PDP and was suspended for his failure to do so. Plaintiff's complaint generally alleges that he suffered damages because *others* relied on the allegedly false evaluation; he has not alleged any damages that he suffered due to *his* reliance on it. He therefore has failed to state a claim for intentional misrepresentation.

**2. Intentional Interference with Economic Relations Claims**

Intentional interference with contractual or business relations requires (1) intentional and willful acts, (2) calculated to damage the plaintiff in his lawful business, (3) done with the unlawful purpose of causing such damage, and (4) resulting in damage. *Blondell v. Littlepage*, 413 Md. 96, 125 (2010). Two general types of this claim exist: (1) claims based on inducing a breach of contract and (2) claims based on otherwise wrongfully interfering with economic relations. *Id.* Plaintiff brings two claims sounding in this cause of action, one labeled "contractual inference with economic relations," and one labeled "intentional interference with economic relations." Based on each claim's allegations, it appears that both are, in substance, claims for intentional interference with contractual or business relations, with the first claim based on inducing a breach of Plaintiff's

11

employment contract and the second claim based on otherwise wrongful interference with his employment.

These claims suffer from the same pleading defect as the § 1983 conspiracy claim. Plaintiff's factual allegations fail to raise a reasonable inference that any of the Individual Defendants had a motivation to damage Plaintiff's economic relations. As described above, although this Court could infer such a motivation by Manasse, Clifford, and Elliott had they known of Plaintiff's report against them, the Complaint does not allege that they had such knowledge, and the Complaint contains no factual allegations suggesting a reason for such a motivation by any of the other Individual Defendants. This Court therefore cannot infer that Individual Defendants acted with the unlawful purpose of damaging Plaintiff's economic relations. Accordingly, these claims must be dismissed.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, ECF 20, will be granted. Plaintiff's claims will be dismissed without prejudice. A separate Order follows, which will close the case, subject to reopening should Plaintiff file a motion for leave to amend his claims within thirty days.

Dated: May 18, 2026                                        /s/
                                         Stephanie A. Gallagher
                                         United States District Judge