**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIAN GORMAN** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No.: SAG-25-03157** |
| **KIMBERLEY SCHATZEL, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Brian Gorman ("Plaintiff") has filed a First Amended Complaint ("FAC") against eleven current and former employees of his former employer, Towson University (the "University"). ECF 38. Those named employees and officials are Kimberley Schatzel, Melanie Perreault, Chris Chulos, Nathan Barker, Marion Hughes, Douglas Pryor, Elizabeth Clifford, Matthew Durington, Michelle Manasse, Michael Elliott, and Samuel Collins (collectively, "Defendants"). *Id.* Defendants have filed a Motion to Dismiss. ECF 37. Plaintiff opposed the motion, ECF 39, and Defendants filed a reply. ECF 41. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' Motion to Dismiss will be granted in part and denied in part.

## I. BACKGROUND

The following facts are derived from Plaintiff's FAC, ECF 38, and are assumed to be true for purposes of this motion. Plaintiff previously worked as a tenured criminal justice professor at the University. *Id.* ¶ 4. On January 18, 2021, Plaintiff emailed Chulos, who served as a Dean at the University, a complaint regarding a job search for a tenure-track faculty position. *Id.* ¶¶ 7, 39–40. Specifically, the complaint alleged that Manasse and another search committee member,

"Professor Antunes," might have a conflict of interest and that there existed an appearance of bias by Clifford and Elliott. *Id.* ¶ 41. Manasse, Clifford, and Elliott had actual knowledge of Plaintiff's complaint because Chulos discussed it with members of the department and it caused "discord" amongst the members. *Id.* ¶ 43.

On February 4, 2021, Plaintiff notified Collins and Durington of concerns that he had regarding the "Third Year Review" of another colleague. *Id.* ¶ 45. The following day, Plaintiff was not allowed to participate in the Third Year Review even though doing so constituted a standard obligation for tenured professors such as Plaintiff. *Id.* ¶ 46. On February 8, he sent an email objecting to his exclusion from the Third Year Review. *Id.* ¶ 47. Later that month, "unidentified faculty" filed a Human Resources complaint against Plaintiff alleging an "attempt to 'shut down' 'equity issues' and 'disparage' his 'colleagues' reputations'" through his whistleblowing reports dated November 27, 2020, February 5, 2021, and February 8, 2021." *Id.* ¶ 48. A University human resources representative later found the allegations against Plaintiff unsubstantiated. *Id.* ¶ 49.

Soon thereafter, on or about March 17, 2021, Plaintiff was informed that he would not be recommended for a merit increase to his salary. *Id.* ¶ 55. Plaintiff filed a series of appeals but the University eventually issued a "final refusal" of the merit increase. *Id.* ¶¶ 56–58. Although Plaintiff attempted to appeal this decision to the Chancellor of the University System of Maryland, the Chancellor's Office notified him that it had no authority to override the University's decision. *Id.* ¶¶ 59–60.

In April, 2021, Plaintiff sent a memo to Chulos, his department chair Hughes, and other University officials regarding the job search for the tenure-track faculty position. *Id.* ¶ 50. Plaintiff reported that Professor Antunes had disclosed a professional relationship with one of the candidates and that the disclosure had been withheld from some committee members. *Id.* Chulos,

through questions presented to Plaintiff by Hughes, then inquired whether Plaintiff "had reported concerns regarding [that job search] to the Office of Legal Counsel and HR." *Id.* ¶ 51. Plaintiff also later submitted an internal "Ethics Point" referral regarding Chulos's inquiry into his "protected reporting activity." *Id.* ¶ 52.

In October, 2021, Plaintiff received a second consecutive "No Merit" designation despite allegedly surpassing the minimum criteria for "Base Merit." *Id.* ¶ 61. The Committee's feedback alleged that Plaintiff had an "unsatisfactory record," but failed to address multiple criteria. *Id.*

The following January, Plaintiff submitted his comprehensive review, which tenured faculty must submit every five years and summarizes the professor's work over the preceding five years. *Id.* ¶¶ 62–63. The six members of the Promotion, Tenure, and Rank ("PTR") Committee, Pryor, Collins, Durington, Manasse, Elliott, and Clifford, each voted that Plaintiff's comprehensive review was "unsatisfactory." *Id.* ¶¶ 66–67. The University's Appointment, Rank, and Tenure Policy ("ART Policy") does not contemplate an "unsatisfactory" designation. *Id.* ¶¶ 17, 68. During the PTR Committee's meeting, the six committee members raised an allegation of scholarly misconduct against Plaintiff without prior notice that it would be discussed at the meeting. *Id.* ¶ 71. Such allegations are generally raised through separate misconduct procedures, not post-tenure review. *Id.* ¶¶ 73–74.

Collins informed Plaintiff after the meeting that the Committee had applied a "No Backtracking" rule during the review, which prevented the Committee from revisiting issues that had been already discussed. *Id.* ¶ 75. Collins and Durington offered to "vet" Plaintiff's "forthcoming scholarship for his compliance with their personal expectations for scholarly work," which Plaintiff asserts "violated his academic freedom." *Id.* ¶ 76. In March, 2022, Chulos sent a letter to Perreault, who served as Provost of the University, affirming the Committee's decision

that Plaintiff's comprehensive review was unsatisfactory. *Id.* ¶ 77. Plaintiff alleges that that decision disregarded Plaintiff's accomplishments in several areas and that Chulos's letter failed to specifically delineate the deficiencies in Plaintiff's comprehensive review..[1] *Id.* On or about March 10, 2022, Plaintiff sent a "formal whistleblower complaint" to University President Schatzel, Perreault, and other officials "reporting concerns regarding hiring, promotion, and retention practices, denial of merit pay, and retaliation." *Id.* ¶ 53. Plaintiff also submitted a whistleblower complaint to the Governor's Office on April 11, 2022, raising "concerns at Towson University." *Id.* ¶ 54.

Perreault directed Plaintiff to develop a Professional Development Plan ("PDP") to remediate the alleged problems with his comprehensive review, as required by University policy, by June 17, 2022. *Id.* ¶ 83. When Plaintiff failed to submit his PDP by the deadline, Perreault notified him that he was, effective immediately, suspended with pay and was not to teach, advise students, or otherwise come to campus. *Id.* ¶ 84. President Schatzel had assigned Barker, an employee of the Office of Human Resources ("OHR"), to participate on the "academic side" in Plaintiff's campus ban and suspension, although OHR is not supposed to be involved in management of faculty. *Id.* ¶¶ 78–80. The campus ban denied Plaintiff access to certain University resources he needed to prepare his PDP. *Id.* ¶ 85. When Plaintiff used the University's

---

[1] Plaintiff disputes whether this letter can be considered by this Court at the motion to dismiss stage. ECF 39 at 3–4. Of course, this Court cannot engage in factfinding or determine the veracity of the letter's contents. Presumably, Defendants will eventually contend that the evaluation of Plaintiff's portfolio in the March 4, 2022, letter is fair, and Plaintiff will contend that it is not. But the authenticity of the letter is not in dispute, meaning that there is agreement that the words on the page were transmitted. To that extent, this Court finds it appropriate to consider the letter because it is referred to in and integral to the Amended Complaint. *See Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 296 (D. Md. 2020) (quoting *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)).

communications system to communicate with students enrolled in his fall class, he received another sanction restricting his use of the system. *Id.* ¶¶ 86–88.

Plaintiff submitted a document entitled "Professional Plan" on August 31, 2022. *Id.* ¶ 89. Following review, Hughes sent Plaintiff a letter formally rejecting his Professional Plan for failure to address the alleged issues raised in the comprehensive review. *Id.* ¶ 90. Plaintiff did not receive the letter critique in advance of the meeting convened to address it on September 9, 2022. *Id.* ¶¶ 90, 92. The September 9th meeting between Chulos, Hughes, and Plaintiff occurred on Zoom and lasted about ten minutes. *Id.* ¶ 92. Chulos informed Plaintiff that the meeting would not involve questions, discussion, or debate. *Id.* ¶ 93. Two weeks later, Schatzel sent Plaintiff a letter notifying him that the University was terminating his employment. *Id.* ¶ 95.

Plaintiff now brings several claims against Defendants: violation of his First Amendment rights pursuant to 42 U.S.C § 1983 (Count I), violation of procedural due process pursuant to 42 U.S.C. § 1983 (Count II), civil conspiracy under 42 U.S.C. § 1983 (Count III), tortious interference with contractual relations (Count IV), intentional interference with economic relations (Count V), and intentional misrepresentation (Count VI). *Id.* at 18–37. He seeks both damages and several forms of injunctive relief, including reinstatement to his former position. *Id.* at 37–38.

## II. LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule

8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Official Capacity Claims

Plaintiff acknowledges that the Eleventh Amendment would bar claims against Defendants for monetary damages in their official capacities and has pleaded those claims against certain Defendants only for prospective injunctive relief under the *Ex Parte Young* exception. ECF 38 ¶¶ 5–9, 113, 126. To determine whether *Ex Parte Young* applies to the federal claims, this Court must "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)).

As this Court reasoned in its opinion relating to the original Complaint, the Fourth Circuit noted in *Biggs v. North Carolina Department of Public Safety* that "[e]very circuit, including this

one, has held that claims for reinstatement to previous employment meet the *Ex Parte Young* exception." 953 F.3d 236, 243 (4th Cir. 2020). Defendants contend that the only Defendant who would have had authority to reinstate Plaintiff, University President Kimberly Schatzel, no longer holds the position. *See* ECF 37-1 at 14–15. But Fed. R. Civ. P. 25(d) permits this Court to order substitution of the new University President for the official capacity claim, which this Court will do upon provision of the correct name by Defendants. With that substitution, the Eleventh Amendment does not bar Plaintiff from seeking the injunctive relief requested in the Complaint against the University President in that person's official capacity.

This Court will therefore turn to the merits of the claims.

**B. First Amendment Section 1983 Claim**

Plaintiff's first claim alleges that Defendants retaliated against him for reporting a perceived conflict of interest in the faculty hiring process, in violation of his First Amendment rights. ECF 38 ¶¶ 98–115. Such a claim requires a plaintiff to allege that "(1) he engaged in protected First Amendment Activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024).

The parties dispute whether Plaintiff's speech was protected by the First Amendment. As a professor at a public university, Plaintiff's speech is protected if he spoke "upon a matter of public concern" either "in his capacity as a private citizen" or "by way of 'scholarship and teaching' in his capacity as a professor." *Katti v. Arden*, 161 F.4th 217, 228 (4th Cir. 2015) (internal citations omitted). Plaintiff suggests that his conduct "satisfies the citizen-speech prong." ECF 39 at 13.

The Supreme Court established in *Garcetti v. Ceballos* that "[w]hen public employees make statement pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." 547 U.S. 410, 421 (2006). Assessing whether an individual spoke as an employee requires this Court to examine the content, form, and context of the relevant speech. *See Rankin v. McPherson*, 483 U.S. 378, 384–85 (1987) (concluding that whether an employee was speaking as a citizen "address[ing] a matter of public concern must be determined by the content, form, and context of a given statement"); *see also Colburn v. Trs. of Indiana Univ.*, 973 F.2d 581, 585–86 (7th Cir. 1992) ("Determining whether an employee's speech is a matter of public concern requires us to consider if the speaker is speaking more like a citizen or a disgruntled employee whose statements are primarily of personal interest.") (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Other courts considering similar professorial complaints regarding faculty hiring and tenure review processes have deemed the professors' speech to be in their capacity as employees, not public citizens. *See, e.g.*, *Plouffe v. Cevallos*, 777 F. App'x 594, 603 (3d Cir. 2019) (addressing a public university professor who expressed concerns regarding a faculty search committee and then filed a whistleblowing complaint); *Hong v. Grant*, 516 F. Supp. 2d 1158, 1167–68 (C.D. Cal. 2007) (considering a public university professor who raised ethical concerns about another professor's tenure review process), *aff'd*, 403 F. App'x 236 (9th Cir. 2010); *Isenalumhe v. McDuffie*, 697 F. Supp. 2d 367, 378–79 (E.D.N.Y. 2010) (finding that professors were speaking as employees when they accused a committee chairperson of falsifying election results for committees).

Plaintiff argues that his position as a criminal justice professor "did not require him to investigate faculty hiring processes, report conflicts of interest in Search Committee proceedings, file Ethics Point referrals, or submit whistleblower complaints to the Governor's Office." ECF 39

at 13 (quoting ECF 38 ¶ 101). But none of the professors in the cases cited above had duties to make complaints about their employers or coworkers either. The question is not whether investigating and making complaints were assigned job tasks, but whether, in communicating the complaints, the professor-employee is speaking as a citizen about matters of genuine public interest or as an employee who is dissatisfied with his employer's and coworkers' decision making.

The fact that Plaintiff worked for a public university does not transform every workplace issue into a matter of public concern. In *McReady v. O'Malley*, a court considered a First Amendment claim asserted by a professor at a public university who alleged that his coworkers had a conflict of interest when they decided to procure a particular software program. 804 F. Supp. 2d 427, 432, 440 (D. Md. 2011). The Court found that the speech was not protected by the First Amendment, reasoning that "[a]n employee's allegations that other employees engaged in misconduct is speech made as an employee, not a citizen" and that an "accusation that members of the faculty had 'conflicts of interest' . . . was also not speech on a matter of public concern." *Id.* The nuances of hiring decisions and processes within a university are not generally matters of public concern warranting First Amendment protection, even at a public institution.

Plaintiff also suggests that he was not acting as an employee when he made an external complaint to the Governor's Office.[2] ECF 39 at 15. But as to that external complaint, he has not alleged sufficient information for this Court to ascertain whether it was protected by the First Amendment. His conclusory allegation that he raised "concerns at Towson University," *see* ECF 38 ¶ 54, does not plausibly suggest that those concerns would be shared by members of the public,

---

[2] That external complaint also occurred in April, 2022, after many of the events Plaintiff alleges had already transpired. ECF 38 ¶ 54. The rejection of his Professional Plan, his ban from campus, and his eventual termination, however, post-dated the external complaint. *See id.* ¶¶ 84, 90, 95.

as opposed to concerns that might be raised by a disgruntled University employee. His First Amendment claim, then, will be dismissed without prejudice.

**C. Procedural Due Process Section 1983 Claim**

Count II alleges a violation of procedural due process against Defendants Shatzel, Perreault, Chulos, and Hughes. *Id.* ¶¶ 116–27. In the context of a tenured public employee, procedural due process entitles the employee "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). That process must be afforded "prior to termination." *Id.*

Taking the facts pleaded by Plaintiff as true, he has plausibly alleged that he was terminated before receiving notice and an opportunity to present his side of the story. There are meaningful differences between the March 4, 2022, letter, which advised Plaintiff of alleged substantive deficiencies in his work performance in regard to the courses he taught and his scholarship, *see* ECF 37-2, and the September 23, 2022, termination letter, which premised a finding that Plaintiff "willfully neglected" his duties as a professor on other charges not mentioned in March, *see* ECF 37-3. Those September charges were Plaintiff's failure to submit a PDP, "widespread dissemination of unsolicited mass email communications," and failing to "comply with reasonable directives" from University administrators. *Id.* at 1. And the September letter expressly represents that "[t]hese reasons constitute the charges supporting your termination." *Id.* Thus, it is the September reasons, not the March reasons, about which Plaintiff needed notice and an opportunity to respond. The facts, as Plaintiff alleges them in his FAC, plausibly suggest he was not afforded that opportunity before his termination, although it is uncontested that he was offered an

opportunity for a post-termination appeal that he did not pursue, *see* ECF 38 ¶ 124(b); ECF 37-1 at 22. His procedural due process claim, then, survives dismissal at this early stage.[3]

Defendants' claim that they are entitled to qualified immunity also fails at this early stage. *See* ECF 37-1 at 11–13. The *Loudermill* standard is well-established and this Court requires a more developed factual record to assess the adequacy of the process offered to Plaintiff and the knowledge and involvement of each of the named Defendants before their entitlement to qualified immunity can be assessed.

**D. Civil Conspiracy Section 1983 Claim**

To state a conspiracy claim under § 1983, the plaintiff must allege that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Establishing this claim constitutes "a weighty burden." *Id.* To do so, the plaintiff must raise the inference that each alleged member of the conspiracy "shared the same conspiratorial objective" and "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

In the FAC, Plaintiff alleges that Defendants conspired to deprive him of (1) his First Amendment rights by terminating his tenured employment in retaliation for his protected speech and (2) his constitutionally guaranteed due process rights. ECF 38 ¶¶ 128–40. As noted above, Plaintiff has not alleged any act that resulted in deprivation of his First Amendment rights because

[3] Plaintiff raises an alternative procedural due process argument contending that Defendants conditioned payment of contractually-required severance pay on a decision not to appeal his termination. ECF 38 ¶ 124(b). That contention appears to be a misreading of the termination letter, which explains how the lump sum payment will be paid in the event of no appeal, but does not address one way or the other whether a like payment would be made if an appeal is filed. *See* ECF 37-3 at 2.

he has not adequately alleged that he engaged in protected speech. And although his procedural due process claim survives dismissal, Plaintiff has not asserted any facts suggesting that the Defendants named in Count II and alleged to be part of the "Administrative Tier" in Count III "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." In fact, he specifically alleges that the Defendants were "acting in their respective administrative capacities," *id.* ¶ 134, and does not allege any facts to suggest joint conspiratorial conduct.[4] As a result, while the procedural due process claim survives dismissal, the independent civil conspiracy claim does not.

**E. Intentional Interference with Economic Relations Claims**

Plaintiff again asserts two "intentional interference" claims that are somewhat duplicative in Counts IV and V, though one focuses on Plaintiff's contractual agreement with the University and one focuses on interference with "prospective economic advantage." *See* ECF 38 ¶¶ 141–154. Claims for intentional interference with contractual or business relations require (1) intentional and willful acts, (2) calculated to damage the plaintiff in his lawful business, (3) done with the unlawful purpose of causing such damage, and (4) resulting in damage. *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (citing *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)). Plaintiff concedes that the two claims overlap and, should these claims proceed to trial, this Court will merge them into a single claim for "intentional interference." ECF 39 at 28.

With the additional factual allegations in the FAC, the intentional interference claim survives dismissal under the low bar applicable to a motion to dismiss. Plaintiff has now alleged

[4] There are also implications of the "intra-corporate conspiracy doctrine" that suggest the alleged conduct within the University might not be cognizable as a civil conspiracy. *See* ECF 37-1 at 12. But this Court need not address that issue on its merits since Plaintiff simply has not alleged facts plausibly stating a conspiracy claim.

that the individual defendants had knowledge of his allegations against them and there can be a plausible inference of motivation to interfere with his tenured relationship and contract with the University and his other career prospects. *See* ECF 38 ¶¶ 151–52. The events Plaintiff describes all transpired after (and flowed from) the "unsatisfactory" review from the evaluating Committee, which was comprised largely of persons against whom Plaintiff had made allegations of wrongful conduct. *See id.* ¶ 152. Viewing the allegations in the light most favorable to Plaintiff, he has plausibly stated an intentional interference claim.

**F. Intentional Misrepresentation Claim**

Finally, in Count VI, Plaintiff persists in attempting to fit this case's "square peg" into an intentional misrepresentation "round hole." As stated in this Court's earlier opinion, a claim for intentional misrepresentation requires that (1) the defendant made a representation that was false, (2) the representation's falsity was known to the defendant or was made with such reckless indifference to the truth to impute knowledge, (3) the representation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied upon the representation and had the right to rely upon it with belief in its truth such that he would not have acted in a way that caused him damage absent the representation, and (5) damage resulted directly from the representation. *Gorman v. Towson Univ.*, No. CV 25-03157, 2026 WL 1378894 (D. Md. May 18, 2026) (citing *Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 984 A.2d 361, 386 (Md. Ct. Spec. App. 2009)).

Assuming the truth of Plaintiff's allegations that the Defendants who served on the PTR Committee (and the Department Chair who transmitted the Committee's representation) intentionally misrepresented that his comprehensive evaluation was unsatisfactory, ECF 38 ¶ 156, Plaintiff has still failed to allege how that false representation was made for the purpose of defrauding him or how he relied on the alleged misrepresentation to his detriment. In fact, Plaintiff

alleges to the contrary, that, "[t]he representation was made in connection with the creation of an institutional record that supported Professor Gorman's termination and affected his ability to pursue an appeal." *Id.* ¶ 159. In other words, by Plaintiff's own assertions, the representation was not made for the purpose of defrauding Plaintiff to believe that his work was unsatisfactory, but to paper a pretextual reason to terminate his employment.

Plaintiff also has not adequately alleged how he relied on the false representation, with belief in its truth, to his detriment. He undertook to counter the evaluation by preparing and submitting (belatedly) a PDP. *Id.* ¶ 89. In his FAC, he says that he relied "on the representation that the process was a legitimate institutional proceeding subject to resolution through the PDP" to his detriment, *id.* ¶ 160, but that is not the false representation he challenges in this claim. He challenges the unsatisfactory designation itself, a designation that he has always contested, not believed. *See id.* ¶ 156. While, as described above, the new facts Plaintiff alleges in his FAC make some of his other claims viable, they do not adequately state a viable claim of intentional misrepresentation and that claim will again be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, ECF 37, will be GRANTED in part as to the claims for First Amendment retaliation, civil conspiracy, and intentional misrepresentation and DENIED as to the claims for procedural due process and intentional interference. A separate Order follows.

Dated: November 2, 2026

/s/
Stephanie A. Gallagher
United States District Judge